# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

|  |  |  |
|---|---|---|
| WESLEY HAMPTON LINKER, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION NO.: CV213-157 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | (Case No.: CR211-26) |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Wesley Hampton Linker ("Linker"), who is currently incarcerated at the Federal Correctional Institution Petersburg-Low in Petersburg, Virginia, filed a Motion to Vacate, Set Aside, or Correct his Conviction and Sentence pursuant to 28 U.S.C. § 2255. Respondent filed a Response. Linker filed a Reply. For the reasons which follow, Linker's Motion should be **denied**.

## STATEMENT OF THE FACTS

Linker was sentenced by this Court to 65 months' imprisonment, after pleading guilty to one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Linker filed a direct appeal. <u>United States v. Linker</u>, 510 F. App'x 900 (11th Cir. 2013). He argued that the district court erred in applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because the evidence was insufficient to support a finding that he possessed the firearm in connection with another

offense. Linker also argued that his sentence was unreasonable, as the predicate crime used to establish his base offense level did not present a risk of violence. Linker's appeal was unsuccessful.

In his Motion, Linker asserts that this Court lacked subject matter jurisdiction under 18 U.S.C. § 922(g)(1) and § 924(a)(2) because there was no federal nexus linking him to interstate commerce. Linker also contends that the conduct used to increase his sentence was in violation of Alleyne, __ U.S. __, 133 S. Ct. 2151 (2013). Linker asserts that his counsel was ineffective for failing to raise the subject matter jurisdiction issue, allowing him to plead guilty while proffering an element of the crime, and for failing to call Officer Perez as a witness. He further asserts that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him. Linker requests that he be resentenced because his state charges, upon which his sentence was enhanced, were dismissed. He avers that the Government violated their plea agreement.

Respondent asserts that Linker's petition is devoid of merit because his: jurisdiction claim is frivolous, as all elements of the offense were properly placed into the record; claim that a jury finding was necessary for his enhancement is hollow because he knowingly and voluntarily waived his right to a jury trial through his guilty plea; counsel's representation far surpassed any standard for deficient performance; constitutional claim has been squarely rejected; claim for breach of the plea agreement cannot stand when he was credited with the acceptance of responsibility reduction; and his state charges played no role in his sentence.

AO 72A
(Rev. 8/82)

## DISCUSSION AND CITATION OF AUTHORITY

### I.  Subject Matter Jurisdiction Claim

Linker argues that his conviction, pursuant to 18 U.S.C. § 922(g)(1), does not qualify as a violation under federal law because an element is missing—that he acted with *mens rea* in or affecting interstate commerce. He states that this shows his factual innocence. He asserts that he had no knowledge that he was connected to or affected commerce, nor could he have known whether the firearm traveled in or affected commerce. He contends that the judgment should be vacated and dismissed for lack of jurisdiction, as there was no federal nexus.

"To establish a violation of § 922(g)(1), the government must prove (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce." United States v. Carlisle, 173 F. App'x 796, 798-99 (11th Cir. 2006) (citation omitted). The Eleventh Circuit has "held that § 922(g)(1) 'is a strict liability offense' and, consequently, does not require the prosecution to prove that the criminal acts were done with specific criminal intent." United States v. Deleveaux, 205 F.3d 1292, 1298 (11th Cir. 2000) (quoting United States v. Thompson, 25 F.3d 1558, 1563 n.4 (11th Cir. 1994) ("Title 18, United States Code, § 922(g)(1) makes it a crime for a convicted felon to possess a firearm. It is a strict liability offense, in that no scienter is required.")).

However, § 922(g)(1) "requires proof of *mens rea* as to possession of a firearm[.]" United States v. Brantley, 68 F.3d 1283, 1290 (11th Cir. 1995) (citation omitted). This requires "that a defendant act 'knowingly' for purposes of § 922(g)(1). To establish that a defendant acted 'knowingly,' the prosecution is not required to prove that the

3

defendant knew that his possession of a firearm was unlawful." Deleveaux, 205 F.3d at 1298 (citations omitted). "The crime of being a felon in possession of a firearm is easily understood. Possession alone is sufficient. The crime does not require any specific intent." United States v. Jones, 143 F.3d 1417, 1419 (11th Cir. 1998) (citation omitted). Because "18 U.S.C. § 922(g)(1)[ ] requires proof of *mens rea* as to possession of a firearm, there is no need to prove *mens rea* as to other elements of the crime." Brantley, 68 F.3d at 1290 (citation omitted).

"As long as the weapon in question has a 'minimal nexus' to interstate commerce, a charge under § 922(g)(1) is constitutional. Carlisle, 173 F. App'x at 799 (citation omitted). "The government only has to demonstrate that the possessed firearm traveled in interstate commerce in order to establish that minimal nexus to interstate commerce." Id. (citation omitted). "The government d[oes] not have to show that [Linker] personally purchased the gun in order to show the gun's connection to interstate commerce." Id.

A Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that Linker possessed the Cobra .32 caliber pistol in McIntosh County, Georgia. He stated that the Cobra was manufactured in Utah and the ammunition found within the Cobra was manufactured outside the State of Georgia. (2:11-cr-00026, Doc. 50, pp. 19-21, S.D. Ga.). This is sufficient to establish that the firearm possessed by Linker traveled in interstate commerce. See Carlisle, 173 F. App'x at 799. The government was not required to prove that Linker knew that the weapon had traveled in interstate commerce.

AO 72A
(Rev. 8/82)

## II. **Alleyne** Claim

### A. Jury Finding of Prior Conviction

Linker asserts that, although he waived his right to a jury trial, his enhancements were elements that increased his penalties and should be submitted to a jury and found beyond a reasonable doubt. He claims the enhancements were not "in play" when he pled guilty. (Doc. 4, p. 3).

The Court is not persuaded by Linker's claim that the court erred, in violation of Alleyne. "In Almendarez–Torres v. United States, 523 U.S. 224 [ ] (1998), the Supreme Court held that a prior conviction is not a fact that must be alleged in the indictment or found by a jury beyond a reasonable doubt." United States v. Rivas, No. 13–13141, 2014 WL 486723, at *2 (11th Cir. Feb. 7, 2014) (citation omitted). "The Supreme Court's subsequent decisions in Apprendi v. New Jersey, 530 U.S. 466 [ ] (2000), Blakely v. Washington, 542 U.S. 296 [ ] (2004), and United States v. Booker, 543 U.S. 220 [ ] (2005), did not disturb the holding of Almendarez–Torres." Id. (citation omitted). "In Alleyne, the Supreme Court overturned Harris v. United States, 536 U.S. 545 [ ] (2002), and held that any factor that increases a defendant's mandatory minimum sentence is an element of the crime that must be found by a jury." Id. "Alleyne, however, did not address prior-conviction sentencing enhancements. Instead, the Supreme Court explicitly stated that it was not revisiting the 'narrow exception to this general rule for the fact of a prior conviction.'" Id. (citation omitted). "As the Supreme Court has yet to overrule Almendarez–Torres, we continue to follow that case as binding precedent." Id. (citing United States v. Thomas, 242 F.3d 1028, 1035 (11th Cir.

5

2001) (noting that we are "bound to follow Almendarez–Torres unless and until the Supreme Court itself overrules that decision").

Linker's argument that, in light of Alleyne, his predicate offense was an element to be submitted to a jury fails. Linker's prior conviction was not an element of his offense and need not be determined by a jury. Furthermore, Linker seeks to retroactively apply Alleyne, and it does not apply retroactively on collateral review. Chester v. Warden, No. 12-15119, 2014 WL 104150, at *4 (11th Cir. Jan. 13, 2014); see also United States v. Harris, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014) (citation omitted) ("the Supreme Court itself has not expressly declared Alleyne to be retroactive on collateral review . . . And Alleyne has not been made retroactive through any combination of cases that necessarily dictate retroactivity."). Consequently, Linker "cannot collaterally attack his conviction[ ]—which became final long before [ ] Alleyne w[as] decided—based on the qualifying nature of his predicate felon[y]." Chester, 2014 WL 104150, at *4.

### B. Jury Finding of Enhancement- U.S.S.G. § 2K2.1(b)(6)(B)

Linker argues that his sentencing enhancement under § 2K2.1(b)(6)(B), which increased his offense level by four points, should have been submitted to a jury. In Apprendi, "the Supreme Court held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" In re Anderson, 396 F.3d 1336, 1338 (11th Cir. 2005) (quoting Apprendi, 530 U.S. at 490). "The Court [ ] revisited that rule in the context of [a] State's sentencing guideline scheme, clarifying that the statutory maximum for Apprendi purposes is the maximum sentence a judge

AO 72A
(Rev. 8/82)

may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." Id. (internal quotation marks omitted) (quoting Blakely, 542 U.S. at 303-304). In Booker, while "[e]xtending its holding in Blakely to the Sentencing Guidelines, the [c]ourt explicitly reaffirmed its rationale first pronounced in Apprendi that '[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'" Id. at 1338-39 (citation omitted).

In Alleyne, "the Supreme Court extended Apprendi's holding to facts that increase the mandatory minimum prescribed by a statute, while recognizing that such facts are distinct from fact-finding that guides judicial discretion in selecting a punishment within limits fixed by law." United States v. Son, No. 13-10590, 2014 WL 351666, at *5 (11th Cir. Feb. 3, 2014). "Accordingly, a district court may enhance a sentence based upon judicial fact-finding so long as its findings do not increase the statutory maximum or minimum authorized by facts determined in a guilty plea or jury verdict." Id.

The maximum statutory penalty and maximum amount of time authorized by the facts established in Linker's plea was ten years. (2:11-cr-00026, Doc. 51, p. 37; Doc. 1-2, p. 8). The Honorable Lisa Godbey Wood's finding that Linker possessed the firearm in connection with another felony offense resulted in a sentencing guidelines range of 57-71 months. This range did not exceed the maximum authorized by his plea (10

AO 72A
(Rev. 8/82)

years). Therefore, it was not required to be submitted to a jury. The court's finding did not violate Alleyne because it did not increase a mandatory minimum prescribed by statute. There was no minimum statutory penalty. (2:11-cr-00026, Doc. 51, p. 37). Although the finding led to a guideline range beginning with 57 months, the guidelines "are advisory rather than mandatory," and Alleyne permits the broad discretion of judges to select a sentence within the range authorized by statute. Alleyne, 133 S. Ct. at 2163; See also Gall v. United States, 552 U.S. 38, 46 (2007) (citation omitted). Linker did not have a mandatory minimum prescribed by statute which was increased by the finding. The maximum authorized by statute and the facts in his plea was not increased by the Court's finding. He was properly sentenced within the predetermined statutory parameters. Second, as discussed in Part II (A) of this Report, Alleyne does not apply retroactively on collateral review.

### C. Application of U.S.S.G. § 2K2.1(a)(4)(A) and § 2K2.1(b)(6)(B)

Linker contends that his sentence calculation was wrong in that it should have started at a base level of fourteen. Linker argues that his prior conviction for breaking and entering was not a "crime of violence" under U.S.S.G. § 4B1.2(a)(2). He asserts that his original burglary charge was dropped once he entered a guilty plea for a non-violent charge for breaking and entering. Linker claims that interpreting the state statute to fall within the category for a crime of violence frustrates the intent and purpose of the statute and his plea agreement, as he believed he was pleading to a non-violent offense. On appeal, Linker argued that the burglary of his parents' unoccupied home, which provided the predicate felony for determining his base offense level had no

AO 72A
(Rev. 8/82)

propensity for violence. Linker, 510 F. App'x at 905. The Eleventh Circuit Court of Appeals rejected this argument.

"Under U.S.S.G. § 2K2.1(a)(4)(A), felons receive a base level of 20 if they committed the firearm offense 'subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense.'" United States v. Harris, 586 F.3d 1283, 1284 (11th Cir. 2009). The Sentencing Guidelines define a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Linker argues this definition only includes burglary of a dwelling, and his violation of North Carolina's statute is not the equivalent. Linker was convicted for a violation of 18 U.S.C. § 922(g)(1). Section 922(g)(1) includes "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Section 924(a)(2) states that whoever "knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both. 18 U.S.C. § 924(a)(2). The term "violent felony" is defined as:

> any crime punishable by imprisonment for a term exceeding one year . . . that--(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B)(ii)-(ii).

AO 72A
(Rev. 8/82)

On appeal, the Eleventh Circuit stated, "the Supreme Court has rejected the contention that robberies of unoccupied dwellings do not constitute crimes of violence." Linker, 510 F. App'x at 905 (citing James v. United States, 550 U.S. 192, 203 (2007)). The court also noted that it has "held that a burglary of a dwelling is a crime of violence for purposes of the Sentencing Guidelines." Id. (citing United States v. Davis, 881 F.2d 973, 976 (11th Cir. 1989)). The Eleventh Circuit stated that the "sentencing factors set forth in 18 U.S.C. § 3553(a) also supported a within-Guidelines sentence." Id. A "district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation omitted). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." Id. (citation omitted). Thus, it is unnecessary for the Court to address this claim.

The Court recognizes that the Supreme Court and Eleventh Circuit have recently issued decisions concerning whether state burglary convictions constitute violent felonies and can serve as an Armed Career Criminal Act ("ACCA") predicate. See Descamps v. United States, __ U.S. __, 133 S. Ct. 2276 (2013); United States v. Ramirez-Flores, No. 12-15602, 2014 WL 667357 (11th Cir. 2014). The Eleventh Circuit clarified the analysis in determining whether a state conviction for burglary qualifies as a predicate under the ACCA in United States v. Howard, 742 F.3d 1334 (11th Cir. 2014). The court must first determine whether the state statute is non-generic or generic. Id. at 1345. "If the statute is generic—[ ] it requires that all of the elements of the generic ACCA crime be present before it is violated—all convictions under the statute necessarily count as ACCA predicates and there is no need for further analysis." Id.

AO 72A
(Rev. 8/82)

(citation omitted). The crime constitutes a predicate if the elements "are the same as, or narrower than, those of the generic offense." Id. (citation omitted). If the statute is non-generic, the court must determine if it is indivisible or divisible, if it gives alternatives to one or more elements it is divisible. Id. (citation omitted). If indivisible the prior conviction does not qualify as a predicate. Id. at 1346. (citation omitted). If the statute is divisible, the court applies the modified categorical approach focusing on the elements, not the facts, of the prior conviction by looking to see if the defendant was found guilty under elements of the divisible statute that match the generic offense, if so, the prior conviction is a ACCA predicate. Id. at 1347 (citation omitted). "The generic, contemporary definition of burglary "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 1342 (citation omitted).

The court in Howard determined that when a statute's definition defines "building" as including a non-exhaustive list of things (vehicle, aircraft, railroad box car), such statute is non-generic and indivisible, and a conviction under such statute cannot qualify as generic burglary under the ACCA. Id. at 1348-49. Like the statute in Howard, North Carolina General Statute § 14-54 also uses the word "include" and could possibly be interpreted as non-generic and indivisible by offering a non-exhaustive list to define building. In contrast, the North Carolina statute does not include such movable items as those included in the statue in Howard, which "fall outside the 'building or structure' element," but only non-movable buildings or structures, which are more in line with the generic definition. See id. at 1348. If this Court were to address this issue, it would be "bound to follow any state court decisions that define or interpret the statute's

11

substantive elements because state law is what the state supreme court says it is." Id. at 1346. Other circuits determined that § 14-54 is generic and constitutes a violent felony. See United States v. Thompson, 588 F.3d 197, 202 (4th Cir. 2009) ("a North Carolina conviction for "breaking or entering" under North Carolina General Statutes § 14-54(a) is, as a matter of law, a 'violent felony' within the meaning of ACCA."); United States v. Stark, 307 F. App'x 935, 940 (6th Cir. 2009) (citation omitted) ("because Section 14-54, as defined by the North Carolina Supreme Court, requires both an unlawful or unprivileged entry and the intent to commit a crime within, we believe that Section 14-54 substantially corresponds to the generic definition of burglary.").

"[A] new decision generally is not applicable in cases on collateral review unless the decision was dictated by precedent existing at the time the petitioner's conviction became final . . . [with] two narrow exceptions to th[is] general rule." Butler v. McKellar, 494 U.S. 407, 409 (1990). Therefore, this Court declines to address this issue because the recent decisions regarding this issue do not apply on collateral review to Linker's motion.

Linker also argued, as he does in the instant motion, that the court erred in applying the four-level enhancement under § 2K2.1(b)(6)(B). Linker asserts that the evidence was insufficient to establish that he possessed the firearm in connection with another felony offense, and the charges creating such were dismissed. The Eleventh Circuit rejected this argument by determining that this Court "did not clearly err in finding credible Officer Drury's account of the events" and because Linker concealed the gun during his encounter and attempted to reach toward it when it fell, the offense was "in connection with" another felony offense. Linker, 510 F. App'x at 904. The court further

stated that, even if the application of the enhancement were error, such error was harmless as the sentencing judge found Linker's sentence appropriate based on the § 3553(a) factors. Id. at 905. As this was addressed on appeal, it is not necessary for this Court to rule on this claim.

## III.  Ineffective Assistance of Counsel

Linker asserts that his trial counsel's performance fell below acceptable standards because he: (1) failed to challenge the jurisdiction of the Court, by arguing there was a missing element, no federal nexus, and no *mens rea*; (2) proffered an element that the government could not have proven, thereby creating a conflict and violating Linker's Fifth and Sixth Amendment rights and allowed Linker to plead guilty; (3) failed to call Officer Perez as a witness violating his Sixth Amendment rights when Linker requested his presence at the hearing; and (4) did not object to the enhancements as violations of the plea agreement.

Criminal defendants have a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 687-688. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, __ U.S. __ 131 S. Ct. 770, 788 (2011) (citing Strickland, 466 U.S. at 690). "It is petitioner's burden to 'establish that counsel [per]formed outside the wide range of reasonable professional assistance' by making

'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (alteration in original) (citations omitted). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 131 S. Ct. at 792.

"In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, we need not review the other prong." Duhart v. United States, No. 12–15350, 2014 WL 775976, at *1 (11th Cir. Feb. 28, 2014). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

### A. Jurisdiction and *Mens Rea*

Linker's argument that his counsel's performance was deficient because he failed to challenge the court's subject matter jurisdiction is unavailing. As addressed in Part I of this Report, the government adequately proved subject matter jurisdiction. Therefore, counsel's failure to challenge such does not render his performance deficient. Even if it were deficient, Linker cannot assert that he was prejudiced by such failure.

Linker states that "there is no *mens rea* that [he] knowingly possessed a firearm [ ] *in* or *affecting* interstate commerce, as charged and indicted." (Doc. 1-1, p. 6). He

asserts that there was a missing element—that he had knowledge that he was in or affecting interstate commerce. He argues that he could not have known the history of the firearm. Linker's argument that his counsel should have challenged the prosecution on the missing element of *mens rea* is misplaced. As addressed in Part I of this Report, there is no requirement to prove *mens rea* regarding the interstate commerce element of the offense. Because it was not necessary to prove that Linker knew the firearm had traveled between states, he cannot claim his counsel's performance was deficient in failing to challenge such or that he was prejudiced by such failure.

### B. Guilty Plea

Linker argues that his counsel was deficient in allowing him to plead guilty and conceding and proffering elements (*mens rea* and jurisdiction) of the crime that the government could not otherwise prove, which sabotaged his defense and violated his Fifth and Sixth Amendment rights. Linker asserts that he had no knowledge that he was in or affected interstate commerce, and there was no evidence that the firearm had been transported in such. He claims it was error to allow him to plead guilty to a charge with these missing elements

"Ordinarily, a defendant's knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings." Duhart, 2014 WL 775976, at *1. Even assuming Linker can assert these claims, these elements, as discussed in Parts I and III (A) of this Report, were either established or unnecessary. As the government met its burden to establish jurisdiction, Linker's counsel did not "compel[ ] him to offer th[ese] missing elements" in violation of his due process and Fifth Amendment rights. (Doc. 1-

15

1, p. 24). Therefore, Linker has not met the Strickland standard and is not entitled to his requested relief on this ground.

### C. Officer Perez

Linker argues that counsel's failure to call Officer Perez as a witness at the sentencing hearing was prejudicial and detrimental to his defense and, as a result, he received an enhanced sentence, in violation of the Confrontation Clause. Hearsay testimony is admissible at sentencing hearings and the Confrontation Clause does not apply to sentencing. "[T]he Supreme Court held that the Due Process Clause, U.S. Const. Amend XIV, § 1, does not provide defendants a right to confront the witnesses against them at sentencing." Muhammad v. Sec'y, Fla. Dep't of Corr., 733 F.3d 1065, 1073 (11th Cir. 2013) (citing Williams v. New York, 337 U.S. 241, 251-52 (1949)). The "'Supreme Court has held that the Confrontation Clause does not apply to capital sentencing,' and that the right to confrontation 'applies through the finding of guilt, but not to sentencing, even when that sentence is the death penalty.'" Id. at 1074 (citation omitted). Thus, the failure to call Officer Perez as a witness or the admission of hearsay (the report) did not violate Linker's confrontation rights.

Linker asserts that Officer Perez's testimony was "extremely relevant and material to [his] case-in-chief." (Doc. 1-1, p. 24). He contends that Officer Perez's statement is "more in-line with that of [his] description of the situation" and the video. Id. Deputy Sheriff Drury ("Drury") testified at the sentencing hearing that the gun fell from Linker's waistband when he was on the hood of the patrol car being patted down, that he took his hands off the front of the car, reached down, and picked up the firearm off the ground, which was not under Officer Perez's foot. (2:11-cr-00026, Doc. 51, p. 14).

AO 72A
(Rev. 8/82)

After reading Officer Perez's report, Drury stated that his report was not a fair representation of what happened. Id. at 15. In regards to Officer Perez's physical position, Drury stated that, "[f]rom the position [Officer Perez] was in behind Mr. Linker, he couldn't see very well . . . I could see a lot more than he could, I guess." Id. at 15-16. In response to questioning concerning whether the gun was under Officer Perez's foot, Drury explained that Linker dropped the gun twice, once initially as it fell from his waistband and then again after a struggle ensued between Linker and Officer Perez, at which time Drury guessed Officer Perez placed the firearm under his foot. Id. at 16. In response to the question, "Officer Perez'[s] statement, written statement, says the firearm was under his foot; is that correct?" Drury stated, "After Mr. Linker dropped it, after he picked it up, yes, it was." Id. On appeal, the court's determination that Drury's testimony was credible was not found to be an error.

Linker cannot show that his counsel's decision not to call Officer Perez to testify during his sentencing hearing was anything other than a strategic decision. Moreover, Linker fails to demonstrate that the witness would have been willing to testify on his behalf or that he would have presented testimony that would have altered the outcome of his sentencing hearing. Even if Linker could establish that counsel's performance was deficient in failing to call Officer Perez as a witness, he cannot establish the second prong for prejudice. As the Eleventh Circuit recognized on appeal, even if the Court erred in applying the § 2K2.1(b)(6)(B) enhancement, it was harmless. The enhancement was applied for possessing the firearm in connection with a felony. Even if the Court heard testimony to rebut this, Judge Wood stated that "[r]egardless of how the guidelines had come out, I think sixty-five months is the right sentence based on the

§ 3553(a) factors." Linker, 510 F. App'x at 905. Therefore, Linker cannot demonstrate a reasonable probability that, but for counsel's error, the result of his sentencing proceeding would have been different and that this likelihood is substantial. His sentence would likely be the same regardless of any evidence regarding his possession of the firearm in connection with another felony offense. Thus, Linker fails to demonstrate that he was prejudiced by this decision, and no relief is available pursuant § 2255 under a claim for ineffective assistance of counsel.

## IV.    18 U.S.C. § 922(g)(1) Claim

Linker asserts that 18 U.S.C. § 922(g)(1) is unconstitutional as written and as applied to him because it exceeds Congress' constitutional powers under the Commerce Clause, interferes with the powers reserved to the states, and is ambiguous as there are no safeguards to inform Linker that his contemplated action would be a federal offense. Linker asserts that § 922(g)(1) violates due process because it: creates a substantial social stigma and the penalties are too severe; regulates conduct which is not a federal matter as it was meant for commercial contexts; fails to offer an affirmative defense or define the elements; and creates a permissive presumption of knowledge which impermissibly shifts the burden of proof.

The Eleventh Circuit has "repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement." United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011) (citation omitted). "The jurisdictional requirement is satisfied when the firearm in question has a 'minimal nexus' to interstate commerce." Id. (citation omitted). The Eleventh Circuit also held that § 922(g)(1) is not

unconstitutional as applied to a defendant when the government demonstrates that the firearm previously traveled in interstate commerce. United States v. McAllister, 77 F.3d 387, 390 (11th Cir. 1996). Linker's "argument that Section 922(g)(1) is facially unconstitutional is foreclosed by [ ] prior precedent." Jordan, 635 F.3d at 1189. Likewise, Linker's "as-applied challenge to Section 922(g)(1) is also unavailing because the government introduced sufficient evidence to prove that the firearm was manufactured [ ] outside the state of Georgia." Id.

The Court also disagrees with Linker's assertion that no defense or elements exist and the burden of proof shifts to the defendant. "To establish a violation of § 922(g)(1), the government must prove beyond a reasonable doubt three elements: (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce." Deleveaux, 205 F.3d at 1296-97 (citation omitted). To establish a justification, a defendant must show four elements as set out in Deleveaux. Id. at 1297. "[T]his limited justification defense does not negate any element of § 922(g)(1), but is an affirmative defense to § 922(g)(1)." Id. Thus, Linker's argument concerning whether an affirmative defense is transformed into an element, thereby shifting the burden of proof, is misplaced. "The justification defense also does not negate any element of this offense, but requires proof of additional facts and circumstances distinct from the evidence relating to the underlying offense . . . there are strong practical considerations in favor of requiring the defendant rather than the government to bear the burden of proving the justification defense . . . ." Id. at 1300. The statute does not allow "a jury to presume the presence of knowledge and forces the defendant to overcome the

19

presumption" nor does it "impose[ ] that he does in fact have [ ] knowledge." (Doc. 1-1, pp. 35-36). Lastly, Linker argues that the statute is unconstitutional because the penalties are too severe and a social stigma results. However, a petitioner's alleged ignorance of the collateral consequences of his plea does not render it or the statute unconstitutional.

## V. Resentencing

Linker argues that he should be resentenced and brings this issue pursuant to Federal Rule of Civil Procedure 59(e) to account for new evidence not available at trial and correct a clear error of law. He asserts that a material change of fact occurred when the state charges, used to enhance his sentence, were dismissed. Linker's reliance on Rule 59 is misplaced as he is not filing a motion to alter or amend the judgment. Even if Linker were filing such motion, it is untimely. Motions filed pursuant to Rule 59 "must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). Judgment in Linker's criminal case was entered on May 15, 2012. (2:11-cr-00026, Doc. 44). The instant motion was filed on October 29, 2013.

Linker asserts that his sentence can no longer stand because it was reliant upon his state charges, which were dismissed. He seeks to have his sentence vacated and remanded in light of this material change, as there "no longer are any felonies or misdemeanors to tie in connection with this instant case" and cannot serve as the basis for an enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). (Doc. 1-1, pp. 38-39). This argument fails because it is irrelevant whether criminal charges were brought or dismissed. The Eleventh Circuit has "reasoned that the Guideline does not require proof that the firearm actually *facilitated* the other felony offense, but focused on the fact

AO 72A
(Rev. 8/82)

that the firearm had 'the *potential* of facilitating' the underlying offense." United States v. Simmons, 291 F. App'x 992, 995 (11th Cir. 2008). Note 14 of the Guidelines describes "in connection with" stating, "[s]ubsections (b)(6)(B) and (c)(1) apply if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense." U.S.S.G. § 2K2.1, comment. (14(A)). It defines "another felony offense" for purposes of subsection (b)(6)(B) as "any Federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, comment. (14(C)). The fact that the state charges that triggered the enhancement were dismissed does not render the enhancement inapplicable when the facts constitute such crime under Georgia law. See United States v. Woodard, 395 F. App'x 641, 641-42 (11th Cir. 2010). Here, the Eleventh Circuit affirmed the Court's finding that, based upon Drury's testimony and the video evidence, Linker possessed the firearm "in connection with" another felony offense. Linker, 510 F. App'x at 904. The fact that his state charges were dismissed has no bearing on the applicability of the enhancement.

## VI.   Violation of Plea Agreement

Linker states that his sentence "was based upon the guidelines range but in violation of the plea agreement." (Doc. 1-1, p. 38). He claims the government breached the plea agreement and will inevitably continue to do so because: (1) the contract did not state that he would be exposed to any further guideline ranges that would increase the sentence; (2) he was placed in an overcrowded prison system; (3) the government failed to inform him that they lacked an essential element necessary to prosecute the

AO 72A
(Rev. 8/82)

case; (4) the government has allowed him to face an increased amount of time; and (5) his time was miscalculated. Linker claims he seeks to "enforce the contract" as it is ambiguous and that the government's breach had a substantial, injurious and prejudicial effect upon him. Id. at 41.

## A. Guideline Ranges that Increased his Sentence

Linker argues that the government failed to inform him of potential enhancements and guideline ranges which would increase his sentence or that it would seek additional points. Linker requests that the additional points be dropped, as they went above and beyond his reasonable expectations.

"The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v. Lynn, 385 F. App'x 962, 964 (11th Cir. 2010) (quoting United States v. Taylor, 77 F.3d 368, 370 (11th Cir.1996)). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." Id. (quoting United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir.1992)). "The court must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." United States v. Al-Arian, 514 F.3d 1184, 1191 (11th Cir. 2008) (citation omitted). "The court must use objective standards to resolve a dispute over the meaning of terms in a plea agreement." Id. (citation omitted). "Parol evidence may be considered only where the language of the agreement is ambiguous or government overreaching is alleged." Id. (citation omitted). However, even "where the government arguably misled [defendant] and where

[defendant] plausibly misunderstood the plea agreement, we cannot enforce an agreement that was never agreed on with specificity." Id. at 1193 (citation omitted).

The agreement is clear and unambiguous. The government promised not to oppose a recommendation for a two-level reduction for acceptance of responsibility and to move for the third level reduction. (Doc. 1-2, p. 6). The government fulfilled its obligations "[b]ecause a promise to recommend acceptance of responsibility does not foreclose the government from arguing in favor of an obstruction enhancement, [and] the government had no duty to refrain from arguing facts supporting that enhancement[.]" United States v. Harley, No. 12-16408, 2013 WL 6097106, at *3 (11th Cir. Nov. 21, 2013). "The plea agreement did not state that the government would avoid pursuing otherwise applicable guidelines enhancements at sentencing." United States v. Wilson, 517 F. App'x 844, 846 (11th Cir. 2013). To the contrary, "[t]he government retain[ed] the right to inform the Probation Officer and Court about all matters concerning the offense and defendant." (Doc. 1-2, p. 7).

Linker admits the agreement is silent on the issue. He asserts that this statement does not inform him that he could receive additional time for such "matters concerning the offense" or that the government would seek to prosecute him on additional issues. (Doc. 1-1, pp. 40, 44). In addition, the agreement stated that, following a presentence investigation report prepared for the Court, which will consider:

> all of defendant's conduct related to the offense to which he is pleading, which may include conduct related to Counts which were or are to be dismissed . . . as well as the defendant's criminal history . . . defendant understands that the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by defendant's counsel or the United States Attorney.

23

(Doc. 1-2, p. 8). Further, the agreement contained an integration clause stating, "this plea agreement contains the entire agreement . . . the defendant has no other agreements, understandings, or deals[.]" Id. at 4. The government's agreed upon obligation to recommend that Linker receive a three level point reduction for accepting responsibility does not make it "reasonable for [him] to believe that these recommendations were to the exclusion of any other guideline recommendation." Wilson, 517 F. App'x at 846. Linker could not reasonably have assumed that the government would not advocate for the application of an enhancement at sentencing. The government did not breach the terms of the plea agreement. In addition, Linker's argument that his counsel's performance was deficient for failing to object to the enhancement as a violation of the plea agreement must also fail. Because there was no breach, he cannot prove he was prejudiced by the failure to state an objection to such.

## B. Conditions of Confinement

The same analysis as in Part VI (A) of this Report applies to Linker's argument that the government breached the plea agreement by placing him in an overcrowded prison. The government did not breach the plea agreement by placing Linker in an "over-crowded prison system," (doc. 1-1, p. 43), because the government did not agree to an obligation regarding Linker's housing. The agreement is silent on the issue. Thus, Linker could not have reasonably expected an obligation and such cannot be enforced by the Court.

Linker asserts that building codes and regulations are violated due to overcapacity and that there is insufficient water, straining of health care services, and

AO 72A
(Rev. 8/82)

negative air quality. Linker claims there are other existing violations concerning food portions and medical, laundry, and rehabilitation services. Claims "where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence . . . . fall within the 'core' of habeas corpus . . . By contrast, constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core[.]" Nelson v. Campbell, 541 U.S. 637, 644 (2004). The factual allegations of this claim challenge the conditions, rather than the validity, of his confinement. Such allegations are more appropriately addressed in a civil rights complaint filed pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

## C. Missing Element

Linker asserts that the government failed to inform him that it lacked proof of *mens rea*, an essential element needed to convict him. He claims the government entered into the plea agreement knowing that it lacked valid proof to establish that he knowingly affected or traveled in interstate commerce. Linker asserts that this information was exculpatory and withholding such information denied him the ability to make an informed and intelligent plea. He claims that the government failed to prove that the firearm traveled in or affected interstate commerce.

As addressed in Part I and III (A) of this Report, the government sufficiently established that the firearm possessed by Linker traveled in interstate commerce. The government was not required to prove that Linker acted with *mens rea* (knowledge) in or affecting interstate commerce. The government did not lack an essential element and no exculpatory information regarding such was withheld.

25

## D. Increased Amount of Time

Linker argues that the government's foreseeable and inevitable breach of contract exists because it has allowed him to face an increased amount of actual prison time in violation of the plea agreement. As determined in Part VI (A) of this Report, the government did not breach the plea agreement by advocating for the application of an enhancement. Thus, it is unnecessary to address Linker's claim that the government will inevitably breach the plea agreement for allowing him to face an increased amount of imprisonment.

## E. Miscalculation

In addition, Linker claims he only agreed to serve 85 percent of the incarceration time to which he pled and was sentenced to. He admits that he did not contract with the Bureau of Prisons ("BOP") but asserts that, the government, through this "instrumentality," breached the plea agreement by miscalculating his time. He claims he should be credited 270 days for good time credit but was granted only 185.

When an inmate seeks "a judicial finding . . . that the sentence ha[s] to be recalculated by the district court to account for time served and/or good-time credit . . . the proper vehicle is a § 2241 habeas petition-after [petitioner] has properly exhausted his administrative remedies." United States v. Martin, 362 F. App'x 69, 70-71 (11th Cir. 2010). "An inmate may challenge with a § 2241 petition the BOP's interpretation or administration of credits[.]" Sawyers v. Warden, USP Atlanta, 465 F. App'x 837, 838 (11th Cir. 2012) (citation omitted).

While Linker's claims challenging the legality or the validity of a sentence are properly pursued under 28 U.S.C. § 2255, his claims challenging the execution of his

26

sentence must be brought pursuant to 28 U.S.C. § 2241. Thus, Linker's claim that the BOP miscalculated his credit is not properly pursued under 28 U.S.C. § 2255.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Linker's motion, filed pursuant to 28 U.S.C. § 2255, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this _1st_ day of April, 2014.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)